WESLEY P. ROWE *vs.* HILL LUMBER MANUFACTURING COMPANY.

Oxford.    Opinion November 27, 1911.

*Master and Servant.    Saw Mill Employee.    Injury.    Negligence.    Evidence.*

Where the plaintiff recovered a verdict for damages for personal injuries sustained by him while operating a swinging circular saw in the defendant's saw mill, *held* that the evidence was not sufficient to show negligence on the part of the defendant and that the verdict should be set aside.

On motion by defendant.    Sustained.

Action on the case to recover damages for personal injuries sustained by the plaintiff and caused by the alleged negligence of the defendant corporation.    Plea, the general issue.    Verdict for plaintiff for $600.    The defendant filed a general motion for a new trial.

The case is stated in the opinion.

*James S. Wright*, for plaintiff.

*Fred V. Matthews*, for defendant.

SITTING : WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, BIRD, HALEY, JJ.

WHITEHOUSE, C. J.    The plaintiff recovered a verdict of $600 for an injury to his right foot received while operating a swinging circular saw in the defendant's saw mill in which he was employed. The case comes to the Law Court on a motion to have the verdict set aside as against the evidence.

The plaintiff claimed to recover on the ground that the framework in which the cutting-off saw in question was hung and the means of operating it were defective, insufficient and unsuitable, in two respects, first, because the saw was so hung and adjusted that it had a lateral, wobbling motion to the extent of an inch or more, and second, because the swinging framework in which the saw was hung, was not provided with a rope or chain of a fixed length to

prevent the saw from coming forward further than was necessary to cut off the log. No other failure of duty on the part of the defendant company is alleged in the writ.

But the plaintiff says at the time of the accident, April 29, 1909, he took hold of the lever and pulled the saw forward for the purpose of sawing off a log, and that the saw, "instead of cutting the log as it should and going back to its place, suddenly jumped and bounded forward beyond what it ought and was supposed to have done and struck the right foot of said plaintiff, &c."

The plaintiff was a man 28 years of age, who as a carpenter was familiar with the use of tools and machinery. At the time of the accident he had been at work in the defendant's mill about six months, principally as a carpenter. In March preceding the accident, he had operated this saw for a few hours in cutting up slabs. On the day in question, the plaintiff and a fellow workman named McLucas, an experienced sawyer, were directed by the foreman to cut up some logs into shingle bolts. "He told McLucas he wanted us to go out and cut up some shingle timber." It is not claimed by the plaintiff that the foreman expressly requested him to operate the saw, and the foreman testified that "McLucas had always run it," and in asking him to go out with the plaintiff and "cut up some shingle timber," he presumed that McLucas would operate the saw. The plaintiff's assistance was needed in handling the logs and bolts. But without the request of any one, after a log had been placed on the platform, the plaintiff proceeded to verify the measure of a shingle bolt with his rule and thereupon voluntarily seized the lever and undertook to operate the saw. He expressed no doubt about his competency to run it and asked for no instructions or suggestions in regard to it, and no complaint is made in the writ because instructions were not given him. He appears to have confidently relied upon his own knowledge of saws in general and his prior experience with this one in particular. The mechanism of the framework of the swinging saw and the means and method of operating it, appear to have been simple and easily understood. Whatever dangers were involved in the operation of it must have been obvious to one of his age and experience. The absence of any

chain or rope to prevent the saw from coming forward beyond the point required to sever the log, which is alleged in the writ and claimed in argument to be a defect in the appliance, must also have been manifest to the plaintiff. In his testimony in both direct and cross examination, he gives an intelligent description of the swinging "ladder" in which this saw is hung, of the permanent framework to which the ladder is attached at the top, of the location of the pulleys and shafts, and of all the essential features of the machine. His testimony also discloses a clear understanding of the method of operating it. In answer to inquiries he states that the diameter of the saw was about 36 inches, and that the collar around the shaft was about four inches, leaving a free blade of the saw for cutting off about 15 or 16 inches, and explains that in sawing off a log 4 inches in diameter, the size of the one they were cutting off at the time of the accident, the saw would necessarily cut beneath its axis, and revolving downwards towards the log, would have a natural tendency to draw the log towards it, but that this log was held in place in a trough between the two wheels of the "hedgehog" in which it was laid.

In giving an account of the accident, he says that after this 4 inch log was placed in position in the trough of the "hedgehog," he cut off the scarf-end, squared the end of it, and "Mr. McLucas would push it right along to measure off a shingle bolt, and I took my rule out and measured the bolt, 16 inches, took my hand and placed it right on the end of that bolt, reached up with this hand and pulled the saw. That saw came and cut the bolt half off, nearly half off as I recollect. Then it bounded forward like a flash and cut my pants and tore them down here and pulled my foot in and cut it right across there. Then the saw thrashed around and struck this piece of iron and stopped the saw in the side of this carriage." He subsequently explained that the saw "went through the stick—either cut or broke it off." With reference to his own position at the time of the accident, he states that his right foot when it was cut, was on one of the logs that had been piled behind him and a foot from the log that came along the track, on a level with the track; and that his other foot was on the left of the saw and his hand on the end of the log.

It conclusively appears, however, from an inspection of the model in evidence which represents the relative proportions of the original saw and framework, that if the right foot had been in the position stated by the plaintiff, the saw would have swung entirely clear of it, and it would have been mechanically impossible for the saw to injure it when it was in that position.

But the plaintiff's fellow workman, McLucas, the most experienced millman and expert sawyer in the defendant's mill, testifying as a witness for the plaintiff, states that he was perfectly familiar with the saw in question and its action under various circumstances, and that "it was in good shape and solid." He explains the manner in which it was deflected from a straight course and run onto the iron of the platform at the time of the accident, by saying that there was a cleat or block nailed onto the platform in front to measure by, and the log to be cut off was pushed up against this block. It was his judgment that he himself pushed the log up against this cleat a "little mite hard" so that when the saw had cut into the log some distance it became bound in the scarf, and when it cut and broke off the shingle bolt, it forced it endwise down into the slot on the left hand side, and wedged the saw up against the iron on the platform at the right of it. He says if the stick doesn't lie properly in its place, the saw will sometimes come forward rapidly when it cuts the stick, but he never used a rope to "tie it back" because he "rather not have it on." In his judgment the slight lateral motion of the saw would not tend to bind it in the log because "it would cut a wider scarf."

After a patient study of all the evidence and a critical inspection of the model exhibited, it is the opinion of the court that there is nothing in the case to justify the conclusion that the machinery in question was either defective, out of repair or unsuitable for the work to be done by it, either in the particulars specified in the plaintiff's declaration or in any other respect. It had only been in use about two years at the time of the accident, and during all that time no complaint had ever been made by any of the workmen who operated it, that it was not reasonably safe and suitable for its purpose. The slight lateral motion of the saw and of its swinging

frame, is shown by uncontradicted testimony to be such only as is usually observable and to be expected in mechanism of that kind even after a short period of service; and it appears from the testimony introduced by the plaintiff as well as that introduced by the defendant, that the employment of a rope or chain to prevent the saw from coming forward too far, is not necessary to its safe operation, but is incompatible with the most effective and convenient use of it.

If the act of McLucas in pushing the log up against the "cleat" a "little too hard," can be deemed a negligent one, it was the negligence of a fellow servant. The existence of the "cleat" itself is not alleged in the writ or claimed in argument to be a defect. There is not sufficient evidence to support a finding that there was any failure of duty on the part of the defendant towards the plaintiff. The principles of law applicable to the different phases of the case have been so fully considered and carefully distinguished in the recent decisions of this court that any discussion of them in connection with this motion for new trial must be deemed superfluous. See *Young* v. *Randall*, 104 Maine, 135; *Cunningham* v. *Bath Iron Works*, 92 Maine, 501; *Jones* v. *Mfg. & Invest. Co.*, 92 Maine, 565; *Conley* v. *Am. Express Co.*, 87 Maine, 352.

*Motion sustained.*
*Verdict set aside.*